IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| JENNIFER FREDERICK, | ) |
| Plaintiff, | ) |
| v. | ) Case No. CIV-22-330-GLJ |
| MARTIN O'MALLEY,[1] Commissioner of the Social Security Administration, | ) |
| Defendant. | ) |

# OPINION AND ORDER

Claimant Jennifer Frederick requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). She appeals the Commissioner's decision and asserts the Administrative Law Judge ("ALJ") erred in determining she was not disabled. For the reasons set forth below, the Commissioner's decision is REVERSED and the case REMANDED to the ALJ for further proceedings.

**Social Security Law and Standard of Review**

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security

---

[1] On December 20, 2023, Martin J. O'Malley became the Commissioner of Social Security. In accordance with Fed. R. Civ. P. 25(d), Mr. O'Malley is substituted for Kilolo Kijakazi as the Defendant in this action.

Act "only if h[er] physical or mental impairment or impairments are of such severity that [s]he is not only unable to do h[er] previous work but cannot, considering h[er] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" *Id.* § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[2]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938); *see also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the

---

[2] Step one requires the claimant to establish that she is not engaged in substantial gainful activity. Step two requires the claimant to establish that she has a medically severe impairment (or combination of impairments) that significantly limits her ability to do basic work activities. If the claimant *is* engaged in substantial gainful activity, or her impairment *is not* medically severe, disability benefits are denied. If he *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. If the claimant has a listed (or "medically equivalent") impairment, she is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show that she lacks the residual functional capacity ("RFC") to return to her past relevant work. At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given her age, education, work experience and RFC. Disability benefits are denied if the claimant can return to any of her past relevant work or if her RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

Commissioner's.  *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991).  But the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

## Claimant's Background

The claimant was fifty-six years old at the time of the administrative hearing. (Tr. 32, 248).  She completed high school, and has worked as a correction officer and jailer. (Tr. 24, 287).  Claimant alleges she has been unable to work since October 16, 2020, due to a mood disorder, PTSD, anxiety, and depression (Tr. 286).

## Procedural History

On December 22, 2020, Claimant applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434, and for supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85.  Her applications were denied.  ALJ Michael Mannes conducted an administrative hearing and determined that the claimant was not disabled in a written opinion dated April 21, 2022 (Tr. 17-25).  The Appeals Council denied review, so the ALJ's written opinion represents the Commissioner's final decision for purposes of this appeal.  *See* 20 C.F.R. §§ 404.981, 416.1481.

## Decision of the Administrative Law Judge

The ALJ made his decision at step four of the sequential evaluation.  At step two, he found Claimant had the severe impairments of degenerative disc disease, depression,

and anxiety, as well as the nonsevere impairments of shoulder pain, insomnia, sleep apnea, and urinary incontinence. (Tr. 20). At step three, he determined she did not meet a Listing. (Tr. 20-21). At step four, he found Claimant had the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. §§ 404.1567(b) & 416.967(b), except that she could only occasionally stoop or climb ramps/stairs, and never climb ladders/ropes/scaffold. Additionally, he determined she could understand, remember and carry out simple and detailed but not complex tasks, and make related judgments; attend for two-hour periods with routine work breaks; pace and persist for an eight-hour workday and forty-hour workweek; interact appropriately with supervisors and co-workers, including accepting criticism and attending meetings; tolerate working in the presence of the public when frequent conversation or communication is not needed; and adapt to a work setting and some changes in the work setting. (Tr. 21). The ALJ then concluded that Claimant was not disabled because she could return to her past relevant work as a correction officer or jailer (Tr. 98).

## Review

Claimant contends that the ALJ erred by failing to account for her bladder impairment in formulating the RFC. The Court agrees, and the decision of the Commissioner must therefore be reversed and the case remanded to the ALJ for further proceedings.

The relevant medical evidence reveals that the claimant largely received treatment for her impairments listed as severe above: depression, anxiety, and back pain. (Tr. 408-871). As to her bladder, the record reflects Claimant underwent an operative procedure to

place an InterStim device on her lumbosacral spinal structure on September 27, 2018, to help with incontinence. (Tr. 874). Additionally, the record frequently reflects Claimant denied genitourinary problems when receiving treatment for other impairments such as back pain or mental health treatment. (Tr., *e.g.*, 414, 668, 699, 718, 740, 796, 846, 858). However, she was positive for urinary incontinence on March 1, 2021. (Tr. 454). That same month, she reported to a different provider that she was having problems awakening to urinate, frequency, urgency, blood in urine, and incontinence. (Tr. 875). The doctor ordered a renal evaluation. (Tr. 877). Two months later, she returned, again complaining that the InterStim did not seem as effective as it had been, and that urinary frequency and urgency were problematic since she started consuming more water. (Tr. 879). The doctor adjusted the InterStim settings, and recommended her for further evaluation of urinary dysfunction and for interrogation of sacral neuromodulation device, noting that first and second-line treatments had failed. (Tr. 881). Claimant again returned in August 2021, reporting the InterStim was not working and her incontinence was bad. (Tr. 892). After an adjustment to the InterStim, Claimant reported only a slight improvement. (Tr. 894).

State reviewing physicians determined initially and on reconsideration that Claimant could perform light work, but only occasionally climb ladders/ropes/scaffolds and stoop. (Tr. 76-78, 115-118). Both physicians noted the claimant's report of trouble controlling her bladder but discussed it no further. *Id.*

Claimant testified at the administrative hearing that she had an InterStim device implanted in her bladder, and that she also wears adult products like Depends due to urinary incontinence. (Tr. 47). She testified that the InterStim device alerted her to her need to go

now but did not state whether it had an effect on frequency. (Tr. 48). She testified that she drinks approximately a gallon or more of water per day, and that she goes to the restroom fifteen to twenty times per day, and often more than once per hour. (Tr. 47-48). A vocational expert ("VE") also testified at the hearing. Upon questioning from the ALJ, the VE testified that a person who, *inter alia*, needed frequent, unscheduled work breaks due to urinary incontinence would be considered unable to maintain competitive employment at all physical demand levels. (Tr. 60-61).

In his written opinion at step two, the ALJ only referred to Claimant's urinary incontinence to name it as a nonsevere impairment. (Tr. 20). At step four, the ALJ summarized much of Claimant's testimony and the medical evidence, but made no mention of her urinary incontinence, not even in recounting Claimant's hearing testimony. (Tr. 22-24). Ultimately, the ALJ assigned the RFC described above and determined that Claimant was not disabled because she could return to her past relevant work. (Tr. 24).

Claimant contends the ALJ's identification of her urinary incontinence as a severe impairment at step two was a boilerplate rejection, and that he erred in failing to consider it in the RFC assessment at step four. As Plaintiff recognizes, because the ALJ *did find* that Claimant had other severe impairments (degenerative disc disease, depression, and anxiety), any failure to find her additional impairments, including her urinary incontinence, severe at step two is considered harmless error because the ALJ was nevertheless required to consider the effect of these impairments and account for them in formulating her RFC at step four. *See, e. g., Carpenter v. Astrue,* 537 F.3d 1264, 1266 (10th Cir. 2008) ("'At step two, the ALJ must 'consider the combined effect of all of [the claimant's] impairments

without regard to whether any such impairment, if considered separately, would be of sufficient severity [to survive step two]. Nevertheless, any error here became harmless when the ALJ reached the proper conclusion that Mrs. Carpenter could not be denied benefits conclusively at step two and proceeded to the next step of the evaluation sequence.'") (quoting *Langley v. Barnhart,* 373 F.3d 1116, 1123–24 (10th Cir. 2004) and 20 C.F.R. § 404.1523); *see also Hill v. Astrue,* 289 Fed. Appx. 289, 292 (10th Cir. 2008) ("Once the ALJ finds that the claimant has any severe impairment, he has satisfied the analysis for purposes of step two. His failure to find that additional alleged impairments are also severe is not in itself cause for reversal. But this does not mean the omitted impairment simply disappears from his analysis.") [citations omitted].

      Claimant is correct, however, that if she has any severe impairment at step two, the ALJ is required at step four to consider all her impairments, severe and nonsevere, in assessing her RFC. *See id.* ("In determining the claimant's RFC, the ALJ is required to consider the effect of *all* of the claimant's medically determinable impairments, both those he deems 'severe' and those 'not severe.'") [emphasis in original] [citations omitted]. "The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (*e. g.*, laboratory findings) and nonmedical evidence (*e. g.*, daily activities, observations)." Soc. Sec. Rul. 96-8p, 1996 WL 374184, at *7 (July 2, 1996). "When the ALJ has failed to comply with SSR 96-8p because [s]he has not linked h[er] RFC determination with specific evidence in the record, the court cannot adequately assess whether relevant evidence supports the ALJ's RFC determination." *Jagodzinski v. Colvin*, 2013 WL 4849101, at *2 (D. Kan. Sept. 11, 2013),

(citing *Brown v. Commissioner of the Social Security Administration*, 245 F. Supp. 2d 1175, 1187 (D. Kan. 2003)).  Here, the ALJ wholly ignored this impairment other than to name it as nonsevere.  As such, the ALJ has failed to account for *all* of Claimant's impairments in formulating the RFC.  This was error.  A reviewing court may not properly determine how the ALJ reached the RFC determination when the ALJ "merely summarizes" much of the relevant evidence, states that he considered the entire record, "and then announces his decision." *Brant v. Barnhart*, 506 F. Supp. 2d 476, 486 (D. Kan. 2007) (internal quotation marks omitted).  Here, the ALJ did not even summarize the relevant evidence.  *Compare with Bradley v. Colvin*, 643 Fed. Appx. 674, 676 (10th Cir. 2016) (affirming an ALJ's failure to discuss a nonsevere impairment at step four where "the ALJ discussed Bradley's hand impairments in detail at the second step in the analysis.").  This is of particular concern in light of the VE's testimony that limitations related to this impairment could eliminate work at all levels.

Because the ALJ failed to provide a narrative discussion of how the evidence supports the RFC, the decision of the Commissioner must be reversed and the case remanded to the ALJ for further analysis.  If such analysis results in any adjustment to the claimant's RFC, the ALJ should then re-determine what work, if any, the claimant can perform and ultimately whether she is disabled.

## Conclusion

In summary, the Court FINDS that correct legal standards were not applied by the ALJ, and the Commissioner's decision is therefore not supported by substantial evidence.

The decision of the Commissioner decision is accordingly hereby REVERSED and the case REMANDED for further proceedings consistent herewith.

**DATED** this 12th day of February, 2024.

_____
**GERALD L. JACKSON**
**UNITED STATES MAGISTRATE JUDGE**